**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2540
_____

RANDOLPH TOWNSHIP BOARD OF EDUCATION,
MORRIS COUNTY, NEW JERSEY,
Appellant

v.

M.T.; I.T., O/B/O M.T.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-22-cv-01762)
District Judge:  Honorable Esther Salas
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
June 22, 2023
_____

Before: CHAGARES, <u>Chief</u> <u>Judge</u>, BIBAS and MATEY,
<u>Circuit</u> <u>Judges</u>.

(Filed: June 29, 2023)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

CHAGARES, Chief Judge.

M.T., a child with a learning disability, and his parent I.T. brought an administrative proceeding against the Randolph Township Board of Education (the "school district"), their local public school district. They alleged that the school district had failed to provide M.T. a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. An administrative law judge ("ALJ") agreed and awarded compensatory damages for the cost of tuition at the private school where I.T. had enrolled M.T., as well as compensation for the costs of other services related to M.T.'s learning disability. The ALJ also ordered the Board of Education to update M.T.'s Individualized Education Program ("IEP") to reflect his placement at the private school and to pay for certain evaluations of M.T. The school district sought judicial review of the ALJ's ruling in the District Court and asked that the District Court stay the ALJ's judgment while judicial review was ongoing. After the District Court denied the motion for a stay, the school district appealed. We will affirm.

I.

Because we write primarily for the parties, we recite only the facts essential to our decision. M.T. is a middle school student who has been diagnosed with several learning disabilities, including attention deficit hyperactivity disorder and an autism spectrum disorder. Between first and fifth grades, M.T. was enrolled in a public school in the school district and received special education services through an IEP. During the 2019-20 school year, M.T. began to exhibit behavioral issues that complicated his education in

2

the public school district. When M.T.'s behavioral challenges deepened in early 2020, the school district excluded him from in-person programming and enrolled him in a home instruction program in which teachers from the school district visited M.T. at home. But the school district reduced its support for in-person home instruction services after the onset of the COVID-19 pandemic, and M.T. struggled with the alternative online programming that the school district offered. After M.T.'s parents failed to obtain an out-of-district placement for M.T. by negotiating with the school district, they unilaterally enrolled him at the Hampshire Country School ("Hampshire"), a boarding school in New Hampshire, in June 2020.

Shortly after enrolling M.T. at Hampshire, M.T.'s parents brought an administrative proceeding before the New Jersey Office of Administrative Law, alleging that the school district had violated the IDEA by failing to provide M.T. with a FAPE. See 20 U.S.C. §§ 1415(a), (b)(6) (requiring "State educational agenc[ies]" and "local educational agenc[ies]" to "guarantee[] procedural safeguards with respect to the provision of a [FAPE]," including by giving parties the "opportunity . . . to present a complaint . . . with respect to . . . the provision of a [FAPE] to [a] child"); N.J. Admin. Code § 6A:14-2.7 (implementing in New Jersey the administrative process required by the IDEA). An ALJ ultimately ruled in favor of M.T. and his parents in February 2022, holding that the school district had not provided M.T. with a FAPE and awarding M.T.'s parents compensation for the costs of enrolling M.T. at Hampshire during the 2020-21 school year. The ALJ declined to explicitly order the school district to fund placement at Hampshire for the 2021-22 school year or subsequent school years. But he ordered the

3

school to update M.T.'s IEP to reflect continued placement at Hampshire and noted that M.T.'s parents could be eligible to seek compensation for continued placement at Hampshire if the school district remained unable to provide a FAPE locally. He also ordered the school district to compensate M.T.'s parents for independent autism and behavior evaluations that they had procured to support their administrative case against the school district.

The school district then sought judicial review of the ALJ's order in the District Court. See 20 U.S.C. § 1415(i)(2)(A) ("Any party aggrieved by the findings and decision made [in an IDEA administrative proceeding] . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section . . . in a district court of the United States."). It sought to stay enforcement of the ALJ decision pending resolution of the litigation in the District Court.

The District Court denied the school district's motion to stay. It identified some deficiencies in the ALJ's analysis: among other issues, the District Court noted that while the ALJ had concluded that the school district had not provided a FAPE, the ALJ had not fulfilled his separate obligation to determine whether Hampshire could provide a FAPE. It concluded that, because of those deficiencies, the school district was ultimately likely to succeed on the merits of its challenge to the ALJ's decision. But the District Court declined to grant a stay because it concluded that the school district had not shown irreparable harm. The District Court reasoned that the ALJ's decision, even if erroneous, merely required the school district to provide compensatory damages to M.T.'s parents,

4

and a party does not suffer irreparable harm when its sole injury is monetary loss. The school district timely appealed the District Court's order.

II.[1]

When evaluating a motion for a stay, courts look to "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." In re Revel AC, Inc., 802 F.3d 558, 568 (3d Cir. 2015) (alterations omitted); see also Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S., 96 F.3d 78, 80 (3d Cir. 1996) (applying those factors to a motion to stay an ALJ's decision in an IDEA case). The "first two factors of the . . . standard are the most critical." Nken v. Holder, 556 U.S. 418, 434 (2009); see also Revel, 802 F.3d at 571. If a stay applicant demonstrates that it is likely to succeed on the merits and that it will suffer irreparable harm absent a stay, a court must "balance the relative harms considering all four [stay] factors using a sliding scale approach." Revel, 802 F.3d at 571 (quotation marks omitted). "We generally review appeals from a denial of a stay for abuse of discretion, giving proper regard to the District Court's feel of the case." Id. at 567 (citations, quotation marks, and alterations omitted).

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(A). Although the District Court's order denying the school district's motion for a stay is not an appealable "final decision[]," 28 U.S.C. § 1291, we have appellate jurisdiction to review the District Court's order as an appealable collateral order. See Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S., 96 F.3d 78, 81 n.4 (3d Cir. 1996).

5

We see no abuse of discretion in the District Court's decision to deny a stay of the ALJ's decision based on its conclusion that the school district had not shown irreparable harm resulting from that decision. As the District Court explained, the ALJ's order primarily awards M.T.'s parents compensatory damages for expenses associated with M.T.'s enrollment at Hampshire and assessment of M.T.'s condition. "[T]he availability of money damages for an injury typically will preclude a finding of irreparable harm," Reilly v. City of Harrisburg, 858 F.3d 173, 179 n.4 (3d Cir. 2017), so the District Court did not abuse its discretion by concluding that the ALJ's order did not cause the school district irreparable harm by requiring the school district to pay compensatory damages. And even if there is a risk that the school district will be unable to recoup funds from M.T.'s parents if the ALJ's order is ultimately vacated, we have held that such a risk does not constitute irreparable harm in an IDEA case. See Susquenita, 96 F.3d at 80–81 (affirming the denial of a stay, based on lack of irreparable harm, where a school district "would not be entitled to recover funds expended to maintain [a student] in private school even if it were to prevail on appeal.").

The school district claims that the ALJ's order to update M.T.'s IEP to reflect placement at Hampshire constitutes irreparable harm, because in the school district's view, updating M.T.'s IEP to reflect placement at Hampshire would violate other provisions of New Jersey law. But federal law requires the school district to review M.T.'s IEP annually and revise it "as appropriate." 20 U.S.C. § 1414(d)(4)(A). To the extent that the school district claims it has suffered irreparable harm merely by being required to update M.T.'s IEP, the school district's argument fails: the school district

6

cannot be irreparably harmed by an order that simply requires it to comply with its statutory obligations.  And even if the school district is correct that the ALJ has ordered the district to make IEP revisions that might later be found to violate New Jersey law, the school district proffers no reason to conclude that temporarily adopting a non-compliant IEP while the litigation proceeds in the District Court will cause it to suffer harm "of a peculiar nature, so that compensation in money cannot atone for it."  Siemens USA Holdings Inc v. Geisenberger, 17 F.4th 393, 408 (3d Cir. 2021) (quotation marks omitted).  We therefore conclude that the District Court did not abuse its discretion by denying the school district's motion for a stay because it did not establish irreparable harm in the absence of a stay.

III.

For the foregoing reasons, we will affirm the District Court's order denying the school district's motion to stay.